UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAO HUAN, YE SONG, AND LIU XIAYING,<br><br>Petitioner,<br><br>v.<br><br>KRISTI NOEM, Secretary of the Department of Homeland Security, PAMELA JO BONDI, Attorney General, TODD M. LYONS, Acting Director, Immigration and Customs Enforcement, JESUS ROCHA, Acting Field Office Director, San Diego Field Office, CHRISTOPHER LAROSE, Warden of Otay Mesa Detention Facility,<br><br>Respondents. | Case No.: 26-CV-512 JLS (DEB)<br><br>**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS**<br><br>(ECF No. 1) |

Presently before the Court is Petitioners Rao Huan's, Ye Song's, and Liu Xiaying's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Pet.," ECF No. 1). Also before the Court are Respondents Kristi Noem's (Secretary of the Department of Homeland Security), Pamela Jo Bondi's (Attorney General), Todd M. Lyon's (Acting Director, Immigration and Customs Enforcement), Jesus Rocha's (Acting Field Office Director, San Diego Field Office), and Christopher LaRose's (Warden of Otay Mesa Detention Facility) (collectively, "Respondents") Response in Opposition to Habeas Petition ("Ret.," ECF No.

6) and Petitioners' Traverse ("Traverse," ECF No. 7).  For the reasons set forth below, the Court **GRANTS IN PART** Petitioners' Petition for Writ of Habeas Corpus.

## BACKGROUND

Petitioners are three women from China who entered the United States in the Spring of 2025 seeking asylum.  Pet. at 2.  Each Petitioner claims that their continued detention violates *Zadvydas v. Davis*, 533 U.S. 678 (2001) and the Due Process Clause of the Fifth Amendment.  *Id.* at 6–10.

### I.     Petitioner Rao Huan

Petitioner Rao Huan ("Huan") entered the United States without inspection on April 2, 2025.  Ret. at 2.  On May 21, 2025, Huan had a positive Convention Against Torture ("CAT") assessment determination, which she withdrew after finding out her mother was seriously ill.  Pet. at 2.  Huan requested to return to China.  *Id.*  Huan was given a final order of removal on September 11, 2025.  Ret. at 2.  On September 9, 2025, Enforcement and Removal Operations ("ERO") submitted a travel document request to ERO's Removal and International Operation.  *Id.*  The last time ERO followed up on this request was on January 20, 2026.  *Id.*

### II.    Petitioner Ye Song

Petitioner Ye Song ("Song") entered the United States without inspection on April 2, 2025. Ret. at 2.  On May 21, 2025, Song was found to have a negative CAT assessment, and a final order of removal was entered.  *Id.*  On July 3, 2025, ERO submitted a travel document request to ERO's Removal and International Operations.  *Id.*  The last time ERO followed up on this request was October 1, 2025.  *Id.*

### III.   Petitioner Xiaoying Liu

Petitioner Xiaoying Liu ("Liu") entered the United States without inspection on March 16, 2025.  *Id.* at 3.  On July 15, 2025, Liu was found to have a negative CAT assessment, and a final order of removal was entered.  *Id.*  On September 26, 2025, ERO submitted a travel document request to ERO's Removal and International Operations.  *Id.* The last time ERO followed up on this request was December 15, 2025.  *Id.*

## LEGAL STANDARD

A federal prisoner challenging the execution of his or her sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district of his confinement pursuant to 28 U.S.C. § 2241.  *See* 28 U.S.C. § 2241(a).  The sole judicial body able to review challenges to final orders of deportation, exclusion, or removal is the court of appeals.  *See generally* 8 U.S.C. § 1252; *see also Alvarez–Barajas v. Gonzales*, 418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)).  However, for claims challenging ancillary or collateral issues arising independently from the removal process—for example, a claim of indefinite detention—federal habeas corpus jurisdiction remains in the district court.  *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006), *abrogated on other grounds by Jennings v. Rodriguez*, 138 S. Ct. 830 (2018); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048–49 (N.D. Cal. 2018) (citations omitted).

## DISCUSSION

When an alien is denied asylum, granted withholding of removal under 8 U.S.C. § 1231(b)(3), and ordered removed, they must be detained for ninety days (90) pending the government's efforts to secure their removal to a third country.  *See* 28 U.S.C. § 1231(a)(2).  This ninety-day period is referred to as the "removal period."  § 1231(a)(1)(A).  After the removal period, this statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States" and "does not permit indefinite detention."  *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001).  A six-month period of post-removal detention constitutes a "presumptively reasonable period of detention."  *Id.* at 701.  After this six-month period passes, the petitioner has the burden to "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."  *Id.*  If petitioner satisfies their initial burden, it then shifts to the Government to rebut that showing.  *Id.*  "[F]or detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink."  *Id.*  "[O]nce removal is no longer

reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. In that case, the alien's release may be conditioned on any of the various forms of conditioned release. *Id.* at 700.

"[T]he removal period begins when an alien is 'ordered removed,' and the removal order becomes 'administratively final.'" *Johnson v. Guzman Chavez*, 594 U.S. 523, 534 (2021).

Section 1231(a)(1)(B) states that:

> The removal period begins on the latest of the following:
> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Here, Song has been detained for seven months post final order of removal, and Liu has been detained for nine months post final order of removal.[1] Traverse at 3. Huan has been detained for five months post final order of removal, but "[a]t no point did the *Zadvydas* Court preclude a noncitizen from challenging their detention before the end of the presumptively reasonable six-month period." *Trinh v. Homan*, 466 F. Supp. 3d 1077, 1092 (C.D. Cal. 2020) (collecting cases); *see also Ndandu v. Noem*, No. 25-CV-2939-RBM-MSB, 2026 WL 25848, at *3 (S.D. Cal. Jan. 5, 2026) (finding that the six-month presumption is rebuttable and finding petitioner rebutted the presumption while only being detained for three months); *Hernandez v. Bondi*, No. 25-CV-2020-EPG-HC, 2026 WL 350829, at *3–4 (E.D. Cal. Feb. 9, 2026) (rebutting presumption after five month

---

[1] Respondents do not contest that the six-month presumptively reasonable period has passed for Song and Liu. *See generally* Ret.; *see also* Traverse at 3.

detention); *Mohammad v. Noem*, No. 25-CV-3424-AB-DBT, 2025 WL 3768581, at *2 (C.D. Cal. Dec. 23, 2025) (rebutting presumption after four month detention); *Uzzhina v. Chestnut*, No. 25-CV-1594-DAD-SCR, 2025 WL 3458787, at *3 n.3 (E.D. Cal. Dec. 2, 2025) ("The fact that a noncitizen has been held in-custody less than six months does not foreclose a claim that his or her detention is unlawful under *Zadvydas*."); *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 396 (D.N.J. 2025) ("Although some courts have read *Zadvydas* as creating a bright-line rule—one that effectively allows the government to detain a person for at least six months without judicial review, even if there was no possibility of removal—a close reading of *Zadvydas* does not support that interpretation."). The Court finds that the six-month period is a presumption that can be rebutted, and that Petitioners have rebutted the presumption.

Petitioners have demonstrated that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Petitioners argue that there is no significant likelihood of removal in the reasonably foreseeable future for three reasons. Traverse at 3. First, in the months since Petitioners' final orders of removal, "ICE has not submitted a request for a travel document to China for any of the Petitioners." *Id.* Rather, ICE has only "submitted a travel document request" to "ERO's Removal and International Operations," which is the "agency headquarters in Washington." *Id.* Second, the government has not explained why it has taken so long to "complete the internal process of preparing a request for a travel document," nor have they provided any timeline for when they expect the request to be submitted to China. *Id.* Third, "ICE has named China one of the top 15 most uncooperative countries in the world." Pet. at 9.

In sum, Petitioners argue that "[b]ecause China is notoriously uncooperative, and because ICE has made no progress in persuading China to accept the petitioners, they have met their initial burden." *Id.* at 10. The Court agrees. *See, e.g.*, *Ghasedi v. Wamsley*, 2025 WL 3699705, at *3 (W.D. Wash. Dec. 1, 2025) (finding the initial burden satisfied where the government had not set a timeframe for removal, did not have an active relocation

request to a third country, did not communicate with a third country about removal, and had designated the country as uncooperative).

Because Petitioners have shown good reason to believe they will not be removed in the reasonably foreseeable future, the burden now shifts to Respondents to rebut Petitioner's showing. *Zadvydas*, 533 at 701. Respondents argue that Petitioner cannot show there is no significant likelihood of removal in the reasonably foreseeable future because they are still in the process of obtaining travel documents to China for all three Petitioners and have successfully removed Chinese nationals in the past. Ret. at 5–6. Respondents, however, do not point to any evidence that they have communicated with China or taken any steps beyond internally sending a request for removal. *See generally id.* Further, the successful removal of Chinese nationals in the past may demonstrate that "there is at least some possibility that [China] will accept Petitioner[s] at some point." *Nguyen v. Scott*, 796 F. Supp. 703, 725 (W.D. Wash. 2025). However, "that is not the same as significant likelihood that [they] will be accepted in the reasonably foreseeable future." *Id.* (citing *Zadvydas*, 533 U.S. at 701); *see also Yang v. Kaiser*, No. 25-CV-2205-DAD-AC (HC), 2025 WL 2791778, at *6 (E.D. Cal. Aug. 20, 2025) ("Respondents' citation to an isolated reported instance of the Chinese government accepting deportees does not, by itself, demonstrate [likelihood of removal] regarding petitioner in particular."); *Singh v. Gonzales*, 448 F. Supp. 2d 1214, 1220 (W.D. Wash. 2006) (finding respondents had not met their burden where they "merely assert[ed] that it ha[d] followed up on its request for travel documents").

The Court concludes that Respondents have failed to rebut Petitioners' showing that there is no significant likelihood of removal. Accordingly, the Court **GRANTS IN PART**[2] the Petition.

---

[2] Because there is no significant likelihood Petitioners will be removed to a third country in the reasonably foreseeable future, the Court declines to address Petitioners' request for an injunction. Pet. at 13. The Court notes, however, that any kind of third country removal like the one Petitioners fear would likely "present due process issues." *Azzo v. Noem*, No. 3:25-cv-03122-RBM-BJW, 2025 WL 3535208, at *8

## CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART** Petitioners' Petition for Writ of Habeas Corpus (ECF No. 1), and **ORDERS** Respondents to immediately release Petitioners from custody. The Parties are **ORDERED** to file a Joint Status Report by February 19, 2026, confirming that Petitioners have been released. As this concludes the litigation in this case, the Clerk of Court **SHALL CLOSE** the file.

**IT IS SO ORDERED.**

Dated: February 13, 2026

Hon. Janis L. Sammartino
United States District Judge

---

(S.D. Cal. Dec. 10, 2025) (quoting *Esmail v. Noem*, No. 25-cv-08325-WLH-RAO, 2025 WL 3030589, at *6-7 (C.D. Cal. Sept. 26, 2025)).